UNITED STATES of America,
Plaintiff-Appellee,

v.

William E. McLAUGHLIN,
Defendant-Appellant.

No. 79–1637.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1981.

Decided Dec. 14, 1981.

Rehearing Denied April 22, 1982.

William D. Keller, Los Angeles, Cal., for defendant-appellant.

Lourdes G. Baird, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before KENNEDY, FERGUSON and NORRIS, Circuit Judges.

NORRIS, Circuit Judge:

William McLaughlin appeals his conviction, after trial by jury, of eight counts of making and subscribing a false federal tax return in violation of 26 U.S.C. § 7206(1). McLaughlin was sentenced to one year's imprisonment and a $5,000 fine on each count. The custodial sentences were to run concurrently. We reverse.

I.

In 1971, McLaughlin, a licensed residential framing contractor in California since 1959, set up a new residential framing company in Orange County, California. He became a signatory to a collective bargaining agreement between the Carpenter's Union and the area framing contractors. The contract established a payment scale which placed a ceiling on the hourly compensation paid to carpenters. The Union wanted the ceiling as a means of preventing piecework by more highly skilled carpenters. In a booming housing market, however, a shortage of available carpenters developed, and skilled carpenters could command pay at higher than scale. Some area contractors initiated a system by which an additional amount above scale, agreed upon by the parties, was paid to carpenters through a second check. The second check system served to disguise the piecework arrange-

ment between contractor and carpenter. Naturally, union benefits were not paid by the contractors on the second check payments.

Appellant employed several different accountants to provide general accounting services, including the preparation of 941 Forms, the business' quarterly reports to the IRS. No federal taxes were withheld from the second check payments made by McLaughlin's company, nor were the amounts included in the quarterly reports signed and filed by McLaughlin.

## II.

McLaughlin contends that the district court erred in failing to dismiss the indictment for prosecutorial misconduct. He asserts various bases for his claim that his constitutional right to due process was violated by the prosecutor's capricious conduct. Specifically, he alleges that (1) the government acted in bad faith by failing to provide an earlier pre-indictment conference, and deceived appellant's counsel into believing that the indictment would be presented at a later date; (2) the government failed to present exculpatory evidence to the grand jury, thus "stampeding" the grand jury into returning an indictment; and (3) the government prejudiced the grand jury by indicating McLaughlin's intention to assert his Fifth Amendment privilege against self-incrimination.

None of McLaughlin's contentions is persuasive. The record reflects that the government notified McLaughlin's attorney's office two weeks prior to the presentation of the indictment. One week later the government informed counsel that the grand jury investigation was in process, and estimated the date on which the indictment would be presented. Appellant offers no authority whatsoever in support of his claim that he was entitled to more.

Appellant's claim that the government was obligated to present his witnesses to the grand jury is similarly unsupported. The record indicates that McLaughlin's counsel requested that the defense witnesses appear before the grand jury only one day prior to the expected indictment date.

■ We conclude that the government made a sufficient effort to provide the grand jury with all available evidence, particularly in light of defense counsel's belated request that the witnesses appear. The government attorney read to the grand jury defense counsel's letter to the prosecutor, in which counsel summarized the anticipated testimony of the five defense witnesses. In order that the letter be more easily understood, the prosecutor explained to the grand jury the defense of reliance on the advice of one's accountant. Moreover, the grand jury was informed that the witnesses were available to testify, that the magistrate was prepared to stay late, and that the grand jury could reconvene the next day if it so desired. That the jury decided, in private, to return an indictment without hearing the witnesses is not grounds for complaint.

■ Finally, we reject outright McLaughlin's claim that the grand jury was prejudiced by learning that McLaughlin intended to invoke his Fifth Amendment privilege if asked to testify before the grand jury. The fact that a grand jury learns of one's intention not to testify does not prejudice it. Indeed, a prosecutor may call before a grand jury someone whom he knows will assert his Fifth Amendment privilege. *United States v. Samango*, 450 F.Supp. 1097, 1106 (D. Hawaii 1978), *aff'd*, 607 F.2d 877 (9th Cir. 1979). Moreover, there is no indication in this case that the prosecutor was acting in bad faith. Rather, the prosecutor, in reading portions of defense counsel's letter to the grand jury as agreed upon by counsel, inadvertently read a sentence which indicated that McLaughlin intended to assert his Fifth Amendment privilege if called to appear. On these facts, we cannot say that there has been fundamental unfairness or a threat to the integrity of the judicial process. Accordingly, it was not error for the district court to deny the motion to dismiss the indictment. *See United States v. Chanen*, 549 F.2d 1306 (9th Cir.) *cert. denied*, 434 U.S. 825, 98 S.Ct. 72, 54 L.Ed.2d 83 (1977).

### III.

■ Appellant asserts that § 530 the Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763 (1978), is a defense to the crime alleged. That section provides that:

"if, for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period ending before January 1, 1980, ... then, for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee."

McLaughlin contends that § 530 prohibits the government from asserting that the carpenters were employees for the purposes of the second checks. In so doing, he misconstrues the nature of the statute. In enacting § 530, Congress clearly looked to the taxpayer's treatment of the individual, not to particular payments to an individual. The legislative history of the section confirms this.

Individuals ... who may not be reclassified are those whom the taxpayer *consistently* has treated in good faith as independent contractors for employment tax purposes. The taxpayer shall be deemed to have acted in good faith only if *all* Federal tax returns (including information returns) required to be filed by the taxpayer were filed on a basis consistent with a taxpayer's treatment of such individuals as independent contractors ...."

S.Rep.No.95–1263, 95th Cong., 2d Sess. 210 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 6761, 6973. (emphasis added).

■ The evidence in the record overwhelmingly indicates that McLaughlin, to the contrary, consistently treated his carpenters as employees for employment tax purposes. He filed IRS 941 Forms for the eight quarters in 1973 and 1974, and included thereon the names, Social Security numbers, and earnings subject to Social Security taxes of each of his employees, including the carpenters. The 941 Forms also included all wages to carpenters recorded in appellant's payroll. Moreover, McLaughlin

sent out W–2 forms—forms reflecting taxes withheld from wages paid to employees—to his carpenters in 1974. Finally, McLaughlin never filed a 1099 Form during 1973 or 1974. 1099 Form must be filed to report payments of over $600 to an independent contractor.

On the basis of the clear language of the statute, the legislative history and the overwhelming evidence presented at trial, we conclude that there is ample evidence in the record to support the jury's rejection of McLaughlin's § 530 defense.

### IV.

McLaughlin's most compelling contention is that the district court committed reversible error in excluding certain evidence offered to impeach the government's principal witness against McLaughlin. McLaughlin's former accountant, Howard Weitz, testified under a grant of immunity that he had advised McLaughlin that it was necessary to withhold federal taxes from the amounts paid to carpenters by second checks. McLaughlin's defense at trial was based largely on his claim of reliance on the 1973 advice of Weitz, his accountant at that time, that federal taxes did not have to be withheld from the second checks because the carpenters were independent contractors, not employees.

■ At trial, McLaughlin sought to impeach Weitz by introducing a tape recording of an August 1975 meeting attended by McLaughlin, Weitz, and the company's bookkeeper. The district court excluded the taped conversation on the ground that it contained no statement by Weitz inconsistent with his testimony in court. Fed.R.Evid. 613(b), 801(d)(1)(A). The trial court did not err in doing so. "A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness. As a preliminary matter, however, the court must be persuaded that the statements are indeed inconsistent" *United States v. Hale*, 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975).

The 1975 meeting did not concern second checks, withholding, or anything related to this case. The meeting occurred seven months after the last act charged in the indictment, and concerned Weitz' future plans (formation of a new company), not his past actions. The tape transcript of the meeting contains no statement that is inconsistent with Weitz' trial testimony. Accordingly, the tape recording of the 1975 meeting was not admissible under Fed.R. Evid. 613(b).

■ We reach a different conclusion, however, with regard to the trial court's exclusion of McLaughlin's testimony as to other allegedly inconsistent statements made by Weitz. At trial, McLaughlin sought to testify regarding statements allegedly made by Weitz at a June 24, 1977 meeting attended by McLaughlin, Weitz, and McLaughlin's attorney. The government's objection was not that the prior statement was not inconsistent with his trial testimony, but rather that the foundational prerequisites of Fed.R.Evid. 613(b) had not been satisfied.

Rule 613(b) provides in pertinent part: Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.

The trial judge expressed "grave reservations" about the government's foundational objection, but, after taking the issue under advisement, rejected the proffered testimony regarding the 1977 meeting. The trial judge concluded that

[b]ecause of the nature of the questions asked, without any indication of time, place, persons present or other identifying material, Weitz ... was not given a fair opportunity to deny or explain his alleged prior inconsistent statements, and the opposite party was not afforded an opportunity to interrogate him thereon as required by Federal Rule of Evidence 613(b) before extrinsic evidence of such claimed statements is admissible.

We hold that the trial court erred in rejecting McLaughlin's proffered testimony as to Weitz' alleged statements at the 1977 meeting. We believe that the minimal foundational requirements of Rule 613(b) were satisfied. The record shows that the meeting in question was adequately described to Weitz when he was reminded on cross-examination of the time, place, and persons present.

The trial judge's concern with the "opportunity to explain or deny" language in Rule 613(b) was misplaced. As the Notes of the Advisory Committee on Proposed Rules state with regard to Rule 613(b):

[t]he traditional insistence that the attention of the witness be directed to the statement on cross-examination is relaxed in favor of simply providing the witness an opportunity to explain and the opposing party an opportunity to examine on the statement, *with no specification of any particular time or sequence.*

(emphasis added) On cross-examination, Weitz denied making the statement in question at the 1977 meeting. On direct examination McLaughlin should have been permitted to testify as to his version of the meeting. The government would have been free to re-call Weitz as a witness and give him an additional "opportunity to explain or deny" the statement attributed to him. Rule 613(b) requires no more.

McLaughlin's offer of proof indicates that this testimony, unlike the tape recording that was properly excluded, does evidence a prior inconsistent statement by Weitz. Weitz testified at trial that he advised McLaughlin that federal taxes must be withheld from the second checks. McLaughlin's proffered testimony was to the effect that at the 1977 meeting Weitz stated to McLaughlin's attorney that *in 1973* Weitz had advised McLaughlin that the carpenters were independent contractors and that federal taxes therefore need not be withheld. There can be no doubt that this testimony was relevant. Weitz's advice to McLaughlin with respect to withholding federal taxes from the pay of the carpenters was a critical issue in the trial.

■ The erroneously excluded evidence was testimony directly impeaching the government's immunized key witness against McLaughlin. Under these circumstances, we cannot say that the erroneous exclusion of direct impeachment testimony was harmless to the defendant. Accordingly, his conviction is REVERSED.[1]

---

1. We find no merit in McLaughlin's remaining contentions that (1) the testimony of an IRS agent regarding the employment status of certain individuals was improperly admitted; (2) certain charts and summaries introduced by the government were improperly admitted because they reflected uncharged criminal acts; and (3) the trial judge made improper comments at trial.