27 F.3d 568
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leonard TAYLOR (92-4050) and Eugene N. Wilson (92-4058),
Defendants-Appellants.
 Nos. 92-4050, 92-4058.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1994.
 
 Before: KEITH, GUY and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 On May 5, 1992, a grand jury returned a ten count indictment charging Eugene Wilson, Leonard Taylor, and Therman Hayes with violations of federal drug and firearms laws. On July 9, 1992, co-defendant Hayes entered pleas of guilty to three counts of the indictment, pursuant to a Rule 11 Plea Agreement. On that same day, Wilson and Taylor's trial commenced, and continued until July 15, 1992, when the jury returned a verdict finding defendant Taylor guilty on seven counts and not guilty on three, and Defendant Wilson guilty on all nine counts in which he was named.
 
 
 2
 Defendants Taylor and Wilson now appeal their convictions and sentences.
 
 I.
 
 3
 Defendants Wilson and Taylor were indicted and convicted as follows:
 
 
 4
 -------------------------------------------------------------------------------
: Count : Charge : Defendant/verdict[1] :
-------------------------------------------------------------------------------
: Count 1 : Conspiracy--Cocaine (21 U.S.C. Secs. : Wilson: guilty :
: : 841(a)(1), 846) : Taylor: guilty :
-------------------------------------------------------------------------------
: Count 2 : Maintaining place for distri- : Taylor: guilty :
: : bution of controlled substance-- : :
: : (21 U.S.C. Sec. 856) : :
-------------------------------------------------------------------------------
: Count 3 : Drug trafficking--Cocaine (21 : Wilson: guilty :
: : U.S.C. Sec. 841(a)(1)) : Taylor: not guilty :
-------------------------------------------------------------------------------
: Count 4 : Drug trafficking--Cocaine (21 : Wilson: guilty :
: : U.S.C. Sec. 841(a)(1)) : Taylor: guilty :
-------------------------------------------------------------------------------
: Count 5 : Drug trafficking--Cocaine (21 : Wilson: guilty :
: : U.S.C. Sec. 841(a)(1)) : Taylor: guilty :
-------------------------------------------------------------------------------
: Count 6 : Felon in possession--firearm : Wilson: guilty :
: : (18 U.S.C. Sec. 922(g)) : Taylor: not guilty :
-------------------------------------------------------------------------------
: Count 7 : Using and carrying firearm during : Wilson: guilty :
: : and in relation to drug : Taylor: not guilty :
: : trafficking offense (18 U.S.C. Sec. : :
: : 924(c)(1)) : :
-------------------------------------------------------------------------------
: Count 8 : Felon in possession--firearm : Wilson: guilty :
: : (18 U.S.C. Sec. 922(g)) : Taylor: guilty :
-------------------------------------------------------------------------------
: Count 9 : Felon in possession--ammunition : Wilson: guilty :
: : (18 U.S.C. 922(g)) : Taylor: guilty :
-------------------------------------------------------------------------------
: Count : Using and carrying firearm during : Wilson: guilty :
 10
: : and in relation to drug : Taylor: guilty :
: : trafficking offense (18 U.S.C. Sec. : :
: : 924(c)(1)) : :
-------------------------------------------------------------------------------
 
 
 5
 Co-defendant Hayes, who entered into a Rule 11 Plea Agreement, testified against Wilson and Taylor at trial. Hayes testified that he was released from prison in February, 1992, and began selling crack cocaine about three weeks prior to his arrest on this indictment. Hayes also testified that he arranged with defendant Taylor to sell crack cocaine from Taylor's apartment. In payment for the use of his apartment, Taylor was paid $100 a week and was given some "rocks" of crack cocaine for personal use. Defendant Wilson was recruited by Taylor after Hayes and Taylor were robbed. Wilson performed the duties of a doorman; he answered the door with a shotgun and made the actual sales of the narcotic.
 
 
 6
 The Akron police were informed of this operation, and on March 23, 1992, Akron Narcotic Detective Joe Barclay asked a cooperating individual, Brent Hubbard, to go to Taylor's apartment and attempt to buy crack from Wilson. When Hubbard went to Taylor's apartment, Wilson answered the door carrying a pistol-grip shotgun. Hubbard purchased 0.32 grams of crack from Wilson on that occasion. On March 26, 1992, Hubbard returned to Taylor's apartment, this time purchasing approximately 0.23 grams of crack from Wilson who again carried the shotgun.
 
 
 7
 Akron police officers approached Taylor's apartment to execute a search warrant at 8:30 p.m. on March 26, 1993. As the Akron SWAT Unit attempted to gain entrance to the apartment in order to secure the premises, shots were fired from inside the apartment and three officers were wounded.
 
 
 8
 While securing the premises, the officers found a loaded .38 caliber revolver on the kitchen floor and a loaded twelve-gauge pistol-grip shotgun under a bed. One of the officers removed two live rounds and four spent shells from the revolver, and determined that the shotgun had been recently fired. The officers arrested all three defendants and during the ensuing search of the apartment pursuant to the search warrant, they found a box of twelve-gauge shotgun shells in a closet next to the bed where the shotgun was found, spent shotgun shells on the floor, a quantity of crack cocaine in the kitchen sink, a police scanner, a mobile pager and several items of identification belonging to Taylor, including a wallet, a library card and a State of Ohio identification card. The officers also found crack cocaine in Taylor's pockets. Akron police performed atomic absorption tests and found that all three defendants had residue on their hands consistent with, or typical of, gun shot emission.
 
 II.
 A. Taylor's Allegations of Error
 
 9
 On appeal, defendant Taylor alleges five errors in the proceedings below.
 
 
 10
 1. Specific Intent in the Aiding and Abetting Charge
 
 
 11
 Taylor maintains that the district court's jury instruction concerning aider and abettor liability was defective because it omitted an instruction on specific intent and relieved the government of its burden to prove guilt beyond a reasonable doubt. Trial counsel for Taylor did not object to the jury instruction; therefore, this Court will review the instruction for plain error. See United States v. Sanchez, 928 F.2d 1450, 1456 (6th Cir.1991); United States v. Pearce, 912 F.2d 159, 163 (6th Cir.1990), cert. denied, 498 U.S. 1093 (1991).
 
 
 12
 The trial court's instruction was as follows:
 
 
 13
 In a case where two or more persons are charged with the commission of a crime, the guilt of any defendant may be established without proof that he personally did every act constituting the offense charged.
 
 
 14
 Whoever commits an offense against the United States or aids, abets, counsels, commands, induces, or procures its commission is punishable as a principal.
 
 
 15
 Whoever willfully causes an act to be done, which if directly performed by him or another would be an offense against the united [sic] is punishable as a principle [sic].
 
 
 16
 In other words, every person who willfully participated in the commission of a crime may be found to be guilty of that offense. Participation is willful if done voluntarily and intentionally and with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.
 
 
 17
 When an appellate court reviews a claim of error in jury instructions, the district court's charge must be considered in its entirety. United States v. Horton, 847 F.2d 313, 322 (6th Cir.1988); see also United States v. Martin, 740 F.2d 1352, 1361 (6th Cir.1984) ("whether the [jury] charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury"), cert. denied. 472 U.S. 1029 (1985).
 
 
 18
 While it is true that a specific intent instruction was not specifically given in regard to the aiding and abetting charge, Count 1 was a conspiracy count, and conspiracy as charged included all of the conduct charged in the remaining substantive counts set forth in the indictment. The court instructed the jury during the conspiracy charge that:
 
 
 19
 If you are convinced that there was a criminal agreement, then you must decide whether the government has proved that the defendants knowingly and voluntarily joined that agreement. You must consider each defendant separately in this regard. To convict any defendant the Government must prove that he knew the conspiracy's main purpose, and that he voluntarily joined it intending to help advance or achieve its goals.... What the government must prove is that the defendant knew the conspiracy's main purpose and that he voluntarily joined it intending to help advance its goals. This is essential.
 
 
 20
 (Emphasis added).
 
 
 21
 Also, at several other points in the jury instructions, the court explained that the jury must find that the defendant acted knowingly or with specific intent. Taken as whole, this instruction was not plainly erroneous; the court's jury instructions did require the jury to find the government had proved beyond a reasonable doubt that Taylor formed the specific intent to be found guilty of aiding and abetting.
 
 2. Specific Unanimity Charge
 
 22
 Taylor next challenges his conviction on the Sec. 924(c) charge of carrying and using firearms during and in relation to a drug trafficking offense (Count 10). Taylor asserts that a specific unanimity charge was required as to Count 10 of the indictment, because Counts 4 and 5 were each possible factual predicates for Count 10; Counts 4 and 5 charged Taylor with knowing distribution of a Schedule II narcotic controlled substance.
 
 
 23
 Taylor did not request a specific unanimity instruction and his trial counsel did not object to this portion of the jury instruction. We therefore review the instruction for plain error.
 
 
 24
 It is not necessary to give specific unanimity instructions unless (1) a count is extremely complex, (2) there is a variance between the indictment and the proof at trial, or (3) there is a tangible risk of jury confusion. United States v. Sanderson, 966 F.2d 184 (6th Cir.1992). The appellant contends that because the government could have charged two separate violations of Sec. 924(c) there was an automatic necessity for a specific unanimity charge. We disagree. The unanimity instruction was not required as there was little or no chance of the jury's being confused about what it must find in order to find Taylor guilty on Count 10, and the other two factors do not apply in this case.
 
 
 25
 3. Exclusion of Codefendant Hayes's Taped Confession
 
 
 26
 Taylor asserts that the district court erred in excluding codefendant Hayes's taped confession, offered by the defense as a prior inconsistent statement for impeachment purposes. Taylor asserts that the exclusion was erroneous because: (1) the requirements of Federal Rule of Evidence 613(b) were met, (2) the taped confession was in substantial part inconsistent with Hayes's testimony, and (3) the confession clearly exculpated appellant of certain acts.
 
 
 27
 F.R.E. 613(b) reads, in pertinent part, as follows:
 
 
 28
 (b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require.
 
 
 29
 A statement may not be used pursuant to Rule 613(b) unless it is in fact inconsistent with the witness's statements made at trial. United States v. McLaughlin, 663 F.2d 949, 952 (9th Cir.1981). At trial in this case, defense counsel twice moved for the admission into evidence of the taped confession of Therman Hayes, made to the Akron Police on the night of the arrest of all three defendants. The government objected to its admission, arguing that the government had not played the tape for any purpose; that although the government had made the tape available to the defendants for use during cross-examination of Hayes, the defendants had not used it; that Hayes's statements on direct examination that he had made the confession, that he had recently listened to the tape and that it was accurate were not sufficient either to lay the necessary foundation for the tape's admission into evidence or to satisfy the requirements of Rule 613(b); that, in any event, the confession was not inconsistent with Hayes's testimony at trial; and that use of the tape at trial by the government might present a Bruton[2] problem. The trial judge refused to admit the tape the first time its admission was moved, citing lack of adequate foundation; when counsel moved a second time for admission of the tape the trial judge simply indicated that he declined to change his prior ruling.
 
 
 30
 We have carefully reviewed the transcript of Hayes's taped confession and the transcript of his testimony at trial, as well as the reference to the tape in the government's direct examination of Hayes, and we find that the district court did not err in refusing to admit the tape. The government's objection was not to the defendants' making use of the tape during the trial; indeed the government made the tape available for that purpose, and the defendants did not attempt to utilize it. The government's objection was to the admission of the tape into evidence and the submission of the tape to the jury, when the tape had not been used at trial. Defendant cannot now complain that he should have been permitted to lay the necessary foundation for admission of the tape by utilizing it in his cross-examination of Hayes, since he made no attempt to do so. Furthermore, although the trial judge did not exclude the tape on the basis that it is not inconsistent with Hayes's testimony, it is apparent that the taped confession and Hayes's testimony at trial are not inconsistent; therefore the tape was not admissible as a prior inconsistent statement.
 
 4. Sufficiency of the Evidence
 
 31
 Taylor asserts that because there was insufficient evidence adduced at trial to support his conviction on Counts 4 and 10, the March 26, 1992, sale of crack, and the use of a firearm during and in relation to drug trafficking, the trial court erred in denying his motion for judgment of acquittal at the close of the government's case. Taylor argues that not a single witness could place him at the apartment during the controlled buy on March 26, 1992, and that while there was evidence that he was present where firearms were being used, there was no evidence that he fired the weapons that were in use that evening.
 
 
 32
 This Court must view all of the evidence in the light most favorable to the government, giving full weight to all reasonable inferences to be drawn from the evidence. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Gibson, 675 F.2d 825, 829 (6th Cir.), cert. denied, 459 U.S. 972 (1982). Only if no rational jury could have found the defendant guilty on that evidence can we overturn the jury's verdict for insufficiency of evidence. Jackson, at 319.
 
 
 33
 Viewing the evidence and all reasonable inferences in the light most favorable to the government, we conclude that there was sufficient evidence to support the jury's verdict. Shortly before the arrest, Brent Hubbard purchased cocaine at Wilson's apartment. When the search warrant was executed, defendants Taylor, Wilson, and Hayes were in the apartment. Shots were fired from inside the apartment at the police officers. Two firearms were found in the apartment and both had been fired. Atomic absorption tests performed by the Akron Police indicated that Taylor had residue on his hands, consistent with, or typical of, gunshot emissions. The apartment indisputably belonged to Taylor and a box of shotgun shells was found in the closet. Further, the testimony of codefendant Hayes indicated he paid Taylor for the use of the apartment, and Taylor recruited Wilson into the conspiracy to act as doorman. The district court did not err in denying the motion for judgment of acquittal.
 
 5. Ineffective Assistance of Counsel
 
 34
 Taylor asserts, for the first time on appeal, that his trial counsel was ineffective. It is a well established rule that this Court "will not review an ineffective assistance of counsel claim that is raised for the first time on appeal." United States v. Straughter, 950 F.2d 1223, 1234 (6th Cir.1991), cert. denied, 112 S.Ct. 1238 and 1505 and 1601 (1992); United States v. Martin, 920 F.2d 345, 349 (6th Cir.1990), cert. denied, 500 U.S. 926 (1991). The Court has instead recognized that such claims "are best brought by a defendant in a post-conviction proceeding under 28 U.S.C. Sec. 2255," where parties "can develop an adequate record on the issue." United States v. Daniel, 956 F.2d 540, 543 (6th Cir.1992). We find that there is no reason presented in this case to make an exception to our rule; therefore we decline to entertain this assignment of error.
 
 B. Wilson's Allegations of Error
 
 35
 Wilson alleges three errors in the proceedings below.
 
 
 36
 1. Motion to Exclude Evidence as to Shooting of Police
 
 
 37
 Wilson contends that Federal Rule of Evidence 403 mandates that the evidence relating to the shooting of the police officers is so prejudicial that it substantially outweighs whatever probative value it might have had.
 
 
 38
 The trial judge has broad discretion when ruling on questions of relevance and in balancing the probative value of relevant evidence against any undue prejudice. Hamling v. United States, 418 U.S. 87, 124-25 (1974); United States v. Brady, 595 F.2d 359 (6th Cir.), cert. denied, 444 U.S. 862 (1979). The Court must consider the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect. Id. at 361. There must be a finding of abuse of discretion by the trial court before the decision to admit evidence can be reversed. United States v. Cusmano, 729 F.2d 380, 383 (6th Cir.), cert. denied, 467 U.S. 1252 (1984).
 
 
 39
 The trial court did not abuse its discretion by admitting the evidence relating to the shooting of the police officers. The defendants were charged with drug trafficking, possession of firearms by felons, and using firearms during and in relation to a drug trafficking offense. The guns were fired as the police executed the search warrant; thus the shooting was actually part of the facts which constitute the crimes charged in the indictment. This evidence also proves that the firearms possessed by the defendants were operable and used during and in relation to a drug offense.
 
 
 40
 2. The Enhanced Penalty Provisions of Sec. 924(c)(1)
 
 
 41
 Defendant Wilson was convicted in two separate counts, Count 7 and Count 10, of two separate violations of 18 U.S.C. Sec. 924(c)(1), using and carrying a firearm during and in relation to a drug trafficking offense. Section 924(c)(1) provides that for the first Sec. 924(c) conviction, the individual will receive a sentence of five years imprisonment, and for a second or subsequent conviction of an offense under Sec. 924(c) the individual is to receive twenty years. The district judge sentenced Wilson to five years for the first conviction and twenty years for the second conviction. Wilson argues that because his two convictions for Sec. 924(c) violations were charged in the same indictment, the enhancement provisions of Sec. 924(c)(1) should not apply.
 
 
 42
 The case law in the Sixth Circuit is clear that if there are two separate criminal episodes, even involving the same firearm, the subsequent conviction language of Sec. 924(c)(1) applies. In United States v. Livingston, 941 F.2d 431, 435-36 (6th Cir.1991), the Court was presented with an indictment that charged two bank robberies committed on two different occasions and two violations of Sec. 924(c). Each Sec. 924(c) violation was for a separate robbery charged in the indictment. We applied the enhanced penalty provisions of Sec. 924(c)(1). See also United States v. Nabors, 901 F.2d 1351 (6th Cir.) (two convictions in same indictment can trigger enhanced penalty), cert. denied, 498 U.S. 871 (1990); United States v. Raynor, 939 F.2d 191, 194 (4th Cir.1991) (plea to two counts in the same indictment charging violations of Sec. 924(c) triggers enhanced penalty).
 
 
 43
 The Supreme Court recently upheld the principles set forth in Livingston, Nabors, and Raynor in Deal v. United States, 113 S.Ct. 1993 (1993). We hold that the trial court correctly imposed the enhanced twenty-year sentence on Wilson pursuant to Sec. 924(c).
 
 3. Wilson's Motion For Mistrial
 
 44
 During closing arguments, codefendant Taylor stood up and made the following statements:
 
 
 45
 THE DEFENDANT: Judge I am going to say that I am a drug user, not a drug dealer. And I uses drugs. He had me under his power. He had me under his power to sell drugs. And my attorney hasn't said these things, so I am going to say these things. I might be wrong. I'm killing me. But I am tired of all these lies.
 
 
 46
 THE COURT: Would you remover [sic] Mr. Taylor please.
 
 
 47
 THE DEFENDANT: Judge, your honor.
 
 
 48
 THE COURT: Mr. Taylor--
 
 
 49
 THE DEFENDANT: He's lying and lying and lying. They know I am a user.
 
 
 50
 THE COURT: Mr. Taylor, this is not the place.
 
 
 51
 THE DEFENDANT: I asked them for help, and they wouldn't give me help. I need help bad.
 
 
 52
 THE COURT: Mr. Taylor, be seated.
 
 
 53
 THE DEFENDANT: You see this man is railroading me, and I don't have the power from this man. Wake up. Wake up. Wake up, and see this thing for what it is. They are railroading me, and this man because we need help, and they won't give us no help. I don't care what they say about me. I need help with my drug problem.
 
 
 54
 Wilson contends that these statements were a proper basis for a mistrial because they evidenced guilty mind on the part of Taylor, which corroborated testimony against Taylor by witness Hubbard, which increased the credulity of Hubbard's testimony against Wilson.
 
 
 55
 The Court denied Wilson's motion for a mistrial, stating:
 
 
 56
 Well, I don't believe that Mr. Wilson's case will be prejudiced by what occurred, and I think that the instructions to the jury make it clear that they are to consider only the evidence in this case. Overruled.
 
 
 57
 We review the denial of a motion for mistrial for abuse of discretion. United States v. Cordell, 924 F.2d 614, 617 (6th Cir.1991); United States v. Levy, 904 F.2d 1026, 1030 (6th Cir.1990), cert. denied, 498 U.S. 1091 (1991). Here, Taylor made no specific reference to Wilson; in fact, it is not at all clear what Taylor is saying. And at least one part of Taylor's statement would appear to evoke sympathy for Wilson. Also, Wilson ignores the fact that there were several other witnesses besides Hubbard who gave credible testimony against Wilson. The motion for a mistrial based on Taylor's statements to the jury was properly denied.
 
 III.
 
 58
 Both defendants appeal the sentences imposed separately for Counts 8 and 9, which charged each of them with being a felon in possession of firearms and a felon in possession of ammunition. The government correctly urges that pursuant to United States v. Throneburg, 921 F.2d 654 (6th Cir.1990), the sentences on those two counts, must be merged, with the result that one $50 special assessment must be abated and sentencing entries for Taylor and Wilson must be amended to reflect this merger.
 
 
 59
 We find no merit in any other allegation of error, and therefore, the convictions of Leonard Taylor and Eugene Wilson are AFFIRMED and the case is REMANDED to the district court for resentencing in accordance with this opinion.
 
 
 
 [1]
 Defendant Hayes is not part of this appeal
 
 
 [2]
 Bruton v. United States, 391 U.S. 123 (1968)